In the Matter of ANTHONY M. GARRAWAY, Appellant, v DENISE L. LAFORET, Respondent. [889 NYS2d 768]—

Garry, J.

Petitioner (hereinafter the father) has been incarcerated since

---

2002 on three felony convictions for animal fighting and perjury, with a maximum release date in 2013. In 2007, respondent (hereinafter the mother) was awarded sole legal and physical custody of the parties' two sons, born in 1999 and 2001. Only the younger son (hereinafter the child) is involved in this proceeding. Between 2003 and 2006, the mother brought the child to the prison for frequent visits with the father. The father's brother (hereinafter the uncle) also brought the child for some visits. In August 2006, the mother stopped all visitation, allegedly because counseling and parenting classes had helped her understand her role as a victim of the father's domestic violence. She testified that the father had coerced her into bringing the child to visit him, that he had subjected her to inappropriate sexual behavior during visits in front of the child, that he insisted on lengthy visits without regard for the child's needs, and that the child was exposed to foul language and inappropriate behavior on the part of others in the prison visiting area.

In April 2008, the father commenced this proceeding seeking weekly visitation. After a fact-finding hearing, Family Court granted the petition, permitting visits at the prison in January and July of each year, with transportation to be provided by the uncle. The order directed the father and the uncle to refrain from making derogatory remarks about the mother and her family during the visits and further allowed the father to send weekly correspondence to the child, to be screened by the mother for appropriateness before it was given to the child. The father now appeals, with the support of the Law Guardian, contending that he should have been given more frequent visitation.

Visitation with a noncustodial parent is presumed to be in a child's best interests even when the parent is incarcerated (see *Matter of Flood v Flood*, 63 AD3d 1197, 1198 [2009]; *Matter of Tanner v Tanner*, 35 AD3d 1102, 1102 [2006]). The presumption may be overcome by substantial evidence that visits would be harmful to the child's welfare or would not be in the child's best interests (see *Matter of Trombley v Trombley*, 301 AD2d 890, 891 [2003]; *Matter of McCrone v Parker*, 265 AD2d 757, 757-758 [1999]). In finding that some visitation was proper, Family Court gave particular weight to the child's long history of visits at the prison. The father argues that in view of that history, as well as the prison's location within an hour of the child's home, the relatively short period of the father's incarceration, and the uncle's willingness to provide transportation, the court's award of only two visits a year was unduly re-

strictive. While such factors as distance and transportation are properly taken into account in considering an incarcerated parent's application for visitation (*see e.g. Matter of Williams v Tillman*, 289 AD2d 885, 886 [2001]; *Matter of McCrone v Parker*, 265 AD2d at 758; *Matter of Ellett v Ellett*, 265 AD2d 747, 748 [1999]), they do not complete the inquiry. In determining how much contact with the father was in the child's best interests, as in any other custody or visitation analysis, the court was required to consider the "totality of the circumstances," as it did here (*Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]).

In addition to the child's youth and the mother's allegations of domestic violence and problems during the child's previous visits, the record includes numerous letters from the father to the child, who was seven years old at the time of trial, that contain clearly inappropriate material, such as a photograph of a semi-nude young woman identified as "your new mommy" and a statement that the child's older brother was not the father's biological son. The letters also contain numerous derogatory comments about the mother, such as warnings that she would abandon the child, that she was lying to him and "brainwashing" him, that she intended to drug the child, and that she was mentally ill. Significantly, the father testified at trial that he saw nothing inappropriate in his letters and that he had merely told the child the truth. According the requisite "substantial deference" to Family Court's findings (*Matter of Ellett v Ellett*, 265 AD2d at 748), we find that the conclusion that it was in the child's best interests to limit his visits with his father to twice yearly was supported by a sound and substantial basis in the record (*see Matter of Flood v Flood*, 63 AD3d at 1198; *see also Matter of Lewis v Lowney*, 296 AD2d 624, 625 [2002]; *Matter of Ellett v Ellett*, 265 AD2d at 748).

Spain, J.P., Rose, Malone Jr. and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.