In the Matter of JACELYN TT. and Others, Neglected Children. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TONIA TT., Appellant. CARLTON TT., Appellant. (Proceeding No. 1.) In the Matter of SASHA TT., a Neglected Child. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TONIA TT., Appellant. (Proceeding No. 2.) [915 NYS2d 732]—

Stein, J. Appeals from two orders of the Family Court of Clinton County (Lawliss, J.), entered June 3, 2010, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10-A, to extend the placement of respondent's children.

In 2009, Family Court issued two orders finding that respondent (hereinafter the mother) had neglected four of her children including, as relevant here, Jacelyn TT. (born in 2001) and Sasha TT. (born in 2008). Although Carlton TT., the father of Jacelyn TT. and two other children (but not Sasha TT.), was not named as a respondent in the neglect proceeding, he appeared at the fact-finding hearing, but did not participate therein. Ultimately, all of the children were placed in petitioner's care. Petitioner initiated these proceedings seeking continuation of such placement. Family Court held a permanency hearing at which petitioner and the mother agreed that placement of the children should continue, with a goal of return to a parent. Carlton TT. (hereinafter the father) again appeared but presented no evidence and did not seek custody.* In two subsequent permanency hearing orders pertaining solely to Jacelyn TT. and Sasha TT., the court continued placement of the children but modified the goal of their permanency plans from reunification to placement for adoption. The mother appeals from both orders and the father appeals only from the order relating to Jacelyn TT. (hereinafter the child).

Initially, we note that the mother's appeals are moot as she

---

* The father is, nevertheless, considered a party to the permanency proceeding (see Family Ct Act § 1089 [b] [1] [i]).

has now surrendered her parental rights to both children (*see Matter of Simeon F.*, 58 AD3d 1081, 1081 [2009], *lv denied* 12 NY3d 709 [2009]) and we do not find the exception to the mootness doctrine to be applicable (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]). Nonetheless, we will address the mother's contentions insofar as they are also advanced by the father with respect to his appeal, since we conclude that his appeal is not moot. While any subsequent permanency orders will effectively supercede the orders appealed from (*see Matter of Ariel FF.*, 63 AD3d 1202, 1203 [2009]), by modifying the permanency goal, Family Court altered petitioner's obligations in future permanency hearings from working toward reunification to working toward permanent placement and termination of parental rights (*see* Family Ct Act § 1089 [c] [4]; [d] [2]). Thus, any new permanency orders will be a direct result of the orders appealed from and the issue of whether those orders were proper will still affect the father's rights (*see Matter of Hearst Corp. v Clyne*, 50 NY2d at 714; *Matter of Kenneth QQ. [Jodi QQ.]*, 77 AD3d 1223, 1224 [2010]; *Matter of Brandon DD. [Jessica EE.]*, 74 AD3d 1435, 1437 n 2 [2010]).

Turning to the merits, the father argues that Family Court abused its discretion by modifying the permanency goal without any request from the parties. We disagree. At the conclusion of a permanency hearing, Family Court is required to make findings and enter an order of disposition "upon the proof adduced . . . and in accordance with the best interests and safety of the child" (Family Ct Act § 1089 [d]). Where the court determines that the child is not to be immediately returned to the parent, it must indicate whether the permanency goal for the child "should be approved *or modified*" (Family Ct Act § 1089 [d] [2] [i] [emphasis added]) and may select among various alternatives including, among others, the child's eventual return to the parent or placement for adoption (*see* Family Ct Act § 1089 [d] [2] [i] [A]-[E]). Notably, Family Ct Act § 1089 (c) (5) (i) characterizes petitioner's proposed permanency goal as a "recommendation." While the statute does not explicitly permit the court to modify a permanency goal in the absence of an application by one of the parties (*compare* Family Ct Act § 340.1 [4] [a]; § 1048 [a]; § 1061), it suggests such authority and does not expressly constrain the court from doing so (*compare* CPLR 7511; Family Ct Act § 340.1 [4] [b]; § 1028 [a]). We, therefore, conclude that Family Court has the authority to modify an existing permanency goal absent a specific request by a party.

We also conclude that Family Court's determination here is supported by a sound and substantial basis in the record and,

therefore, will not be disturbed (see Family Ct Act § 1089 [d] [2] [i]; Matter of Telsa Z. [Rickey Z.], 74 AD3d 1434, 1435 [2010]). The hearing testimony and evidence before Family Court primarily related to the mother's efforts and progress toward addressing the basic needs of the children. The record is replete with evidence that, despite petitioner's assistance, the mother had not sufficiently demonstrated a willingness to work toward the original permanency goal of reunification or made satisfactory progress in that regard.

As for the father, although he appeared at the permanency proceedings with counsel, he did not present any evidence or cross-examine any witnesses, nor has he ever exercised his statutory right to pursue custody of the child (see Family Ct Act § 1035 [d]). Nonetheless, petitioner has fulfilled its statutory obligation to make reasonable efforts to reunify the father with the child (see Family Ct Act § 1089 [d] [2] [iii]). Petitioner has regularly kept the father informed of the child's progress in foster care and in school, suggested parenting classes that he could take to assist him and repeatedly requested information from him as to his plans for custody of the child. However, the father indicated to petitioner's caseworker that he did not wish to be a custodial resource and he failed to respond to repeated requests for further information from him regarding his permanent plans for the child. Petitioner's caseworker also testified regarding her efforts during the father's visitation to facilitate his interaction with the child, to no avail. For example, even though the caseworker suggested questions he could ask and games he could play, he barely interacted with the child and, on one occasion, attempted to leave the visitation three times in a 45-minute period.

The purpose of Family Ct Act article 10-A is, in part, to "promote[ ] permanency, safety and well-being" in the lives of children placed in foster care (Family Ct Act § 1086; see Senate Mem in Support, Bill Jacket, L 2005, ch 3, 2005 McKinney's Session Laws of NY, at 1907-1909), which may involve initiating proceedings to terminate parental rights in appropriate circumstances (see Social Services Law § 384-b [1] [b]; Matter of Joyce T., 65 NY2d 39, 47 [1985]). While "[t]he State's first obligation is to help the family stay together[,] . . . the Legislature has determined that a normal family life in a permanent home offers the best opportunity for a child to develop and thrive . . . [Thus, w]hen it is clear that natural parents cannot offer a normal home for a child, . . . the statute directs that a permanent home be sought" (Matter of Joyce T., 65 NY2d at 47 [citations omitted]). Here, the evidence indicated a lack of aware-

ness on the part of the mother and the father regarding the child's basic needs and of the reason for the child's placement in foster care, as well as a failure to understand—or to accept—their parenting responsibilities despite petitioner's reasonable efforts. Under these circumstances, we perceive no abuse of discretion in Family Court's determination that a change of the permanency goal to adoption was in the child's best interest (*see Matter of Haylee RR.*, 47 AD3d 1093, 1095 [2008]).

We have considered the father's remaining contentions and find them to be unpersuasive.

Cardona, P.J., Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the order entered June 3, 2010 relating to Jacelyn TT. is affirmed, without costs. Ordered that respondent's appeal from the order entered June 3, 2010 relating to Sasha TT. is dismissed, as moot, without costs.