McCarthy, J.
Respondent Lisa G. (hereinafter the mother) and respondent Robert H. (hereinafter the father) are the parents of a daughter (born in 2005). In 2007, Family Court, on respondents’ consent, entered an order granting sole legal and physical custody to the mother with supervised visitation to the father. The custody order, as well as related orders of protection set to expire in 2023, forbid the father from unsupervised contact with the child and order the mother to ensure that the father remained at least 1,000 feet from the child except during visitation supervised by specified individuals or a named program.
In 2011, when the father was living with the mother and child, petitioner commenced neglect proceedings against respondents, primarily citing their violation of the orders of protection and the father’s prior violence toward the mother. At the initial appearance, respondents consented to temporary removal of the child from their care and placement with a maternal aunt. Following a fact-finding hearing, Family Court concluded that the child was neglected by respondents. The mother appeals from that order.
After a combined dispositional hearing and permanency hearing, Family Court continued placement with the aunt, modified the permanency goal to placement with a fit and willing relative, and ordered that respondents’ visitation be supervised. The court also issued orders of protection prohibiting unsupervised contact with the child by either respondent. Both *934 respondents appeal from the dispositional/permanency order and the father appeals from one order of protection.
Family Court’s neglect finding is supported by the evidence. Courts will sustain a finding of neglect if the petitioner establishes by a preponderance of the evidence that the child’s physical, mental or emotional well-being was harmed or in imminent danger of harm as a result of the failure by a parent to exercise a minimum degree of care (see Family Ct Act § 1012 [f] [i] [B]; Matter of Xavier II., 58 AD3d 898, 899 [2009]). In making a determination regarding the minimum degree of care, courts view the parent’s behavior objectively in comparison to the expected actions of a reasonable and prudent parent in the same circumstances (see Matter of Samuel DD. [Margaret DD.], 81 AD3d 1120, 1122 [2011]). Here, the father had a history of violent behavior, including a rape of the mother while he left the child in his vehicle in 2007 and an attack where he choked the mother in 2010 while the child was apparently sleeping in the same house. The father also had a criminal history that included convictions for assault, endangering the welfare of a child and criminal contempt. The mother minimized the father’s behavior and desired to continue her and the child’s relationship with him (see Matter of Shalyse WW., 63 AD3d 1193, 1196 [2009], lv denied 13 NY3d 704 [2009]).
In 2007, respondents consented to orders of protection prohibiting the father from unsupervised contact. Family Court found, as supported by the record, that respondents were aware that those orders remained in effect, but permitted the father to have contact with and live with the child in violation of the orders. Respondents involved the child in lying and deception, as well as adult issues. She told more than one person that she and the mother hid when the police came to the door, the father hid under a bathtub and ran into an orchard to avoid the police, and that she skipped school and the mother falsely claimed the child was sick so that they could pick up the father from the hospital. The child also stated that her father had used pills before, the police hated him and they wanted to put him in jail.
The child’s behavior in school and on the bus deteriorated around the time that petitioner and police began investigating whether respondents were violating the orders, which coincided with respondents’ efforts — including involvement of the child — to avoid and deceive the investigators. A counselor testified that the child increasingly shut down or either changed the topic or recanted after she made any statements about the father’s presence. After being removed from respondents’ care, the child’s behavior improved. Respondents’ actions fell short of
*935 what would be expected of reasonable and prudent parents and placed the child in imminent danger of harm to her mental or emotional well-being. Thus, Family Court’s finding of neglect is supported by a preponderance of the evidence (see Matter of Thomas M. [Susan M.], 81 AD3d 1108, 1108-1109 [2011]; Matter of Paul U., 12 AD3d 969, 971 [2004]).
In December 2011, to resolve a custody petition filed by the aunt, respondents consented to an order granting the aunt sole legal and physical custody and providing respondents with supervised visitation. This permanent order of custody rendered the appeals from the dispositional aspect of the dispositional/ permanency order moot (see Matter of Jacob SS., 59 AD3d 825, 826 [2009]). Similarly, as the order of protection entered in September 2011 expired by its own terms in April 2012, the father’s appeal from it is moot (see Matter of Chelsea M. [Ernest M.], 68 AD3d 1489, 1489 [2009]; Matter of Destiny HH., 63 AD3d 1230, 1231 [2009], lv denied 13 NY3d 706 [2009]).*
Family Court did not err in changing the child’s permanency goal to placement with a fit and willing relative. At the conclusion of a permanency hearing, the court has the authority to modify an existing permanency goal and must enter a disposition based upon the proof adduced and in accordance with the best interests of the child (see Family Ct Act § 1089 [d] [2]; Matter of Jocelyn TT. [Tonia TT.—Carlton TT.], 80 AD3d 1119, 1120 [2011]). While returning the child to the parent is the preferred outcome, “when such reunification is not possible because of a parent’s unwillingness or inability to correct the conditions that led to the removal of the child[ ] from the home, the goal then shifts to finding a permanent, stable solution as soon as possible” (Matter of Destiny EE. [Karen FF.], 82 AD3d 1292, 1294 [2011]). Here, the court found, as supported by the record, that the mother continues to place her interest in maintaining her relationship with the father, despite his history of violence and the orders of protection, over her relationship with and the safety of the child. The court found it unlikely that the mother’s thinking would change in the foreseeable future — considering that she had already undergone 15 years of mental health counseling — such that the child would be able to safely return to the mother’s care. Accordingly, Family Court did not abuse its discretion in modifying the permanency goal to placement *936 with a fit and willing relative (see Matter of Jacelyn TT. [Tonia TT.—Carlton TT.], 80 AD3d at 1121-1122).
Mercure, J.E, Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the orders entered September 9, 2011 and September 20, 2011 are affirmed, without costs. Ordered that the appeal from the order of protection entered September 20, 2011 is dismissed, as moot, without costs.

 While the father argues that the order of protection expires in 2023, he is mistakenly referring to the 2007 order of protection. We have no jurisdiction to address that order, as he did not appeal from it and the time to do so has long passed (see Family Ct Act § 1113; Matter of Houck v Garraway, 293 AD2d 782, 783 n 2 [2002]).