Clark, J.
Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered September 4, 2014, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act articles 10 and 10-a, to adjudicate respondent’s child to be neglected, and modified the permanency plan for respondent’s child.
In May 2014, respondent gave birth to a child while she was an inmate in the custody of the Clinton County jail awaiting transfer to a state correctional facility. At that time, no person had been established to be the child’s father. Two days after the child’s birth, respondent consented to the child’s temporary placement in foster care, and, about a week later, petitioner filed a neglect petition pursuant to Family Ct Act article 10 alleging that respondent had been sentenced to seven years in prison and, without suitable relatives to care for the child, was putting the child at imminent risk of harm. After an initial appearance, Family Court placed the child in the temporary custody of petitioner and, following a subsequent fact-finding hearing on the issue of neglect — at which respondent waived her right to a full hearing and made substantial admissions— the court determined that the child was neglected by respondent. In September 2014, after a combined dispositional and permanency hearing, the court sua sponte modified the child’s permanency goal from return to the parent to placement for adoption by petitioner, and denied visitation with both respondent and the child’s half sibling. Respondent now appeals from that order.
First, it is well settled that “Family Court may modify the permanency goal, even in the absence of a request” (Matter of Kobe D. [Kelli F.], 97 AD3d 947, 948 [2012] [citations omitted]; see Family Ct Act § 1089 [d] [2] [i]; Matter of Jacelyn TT. [Tonia TT. — Carlton TT.], 80 AD3d 1119, 1120 [2011]). While the aspiration is to return a child to his or her parents, where such goal “proves impossible because a parent is unable ... to cor *1094 rect the conditions that led to the removal, . . . the goal then becomes finding a permanent, stable solution for the child” (Matter of Alexus SS. [Chezzy SS.], 125 AD3d 1141, 1143 [2015] [internal quotation marks, brackets and citation omitted]; see Matter of Dezerea G. [Lisa G.], 97 AD3d 933, 935 [2012]).[1]
Our review of the record demonstrates a sound and substantial basis for Family Court’s sua sponte modification (see Matter of Kobe D. [Kelli F.], 97 AD3d at 948 [2012]; Matter of Rebecca KK., 55 AD3d 984, 986 [2008]). At the combined dispositional and permanency hearing, respondent testified that her earliest release date for her seven-year prison term is in 2020, with a possibility of an earlier release date in June 2017 if she participates in certain programming. Petitioner’s caseworker testified that the father of the child[2] was also incarcerated and was serving a five-year prison sentence, and respondent agreed that the father would not be a good resource for the child. Further, despite the fact that petitioner had notified respondent’s relatives of the pendency of the proceeding, no viable custodial resources for the child had been identified at the time of the proceeding. The caseworker testified at the hearing that the foster parents were interested in being a long-term placement for the child. Finally, although petitioner recommended return, to the parent as the planning goal for the child, it was unable to explain how this goal was to be accomplished given respondent’s lengthy incarceration. Thus, because the record demonstrates that respondent was unable to correct the conditions that led to the child’s removal, that is, her incarceration and the lack of other custodial resources for the child, Family Court’s modification of the permanency goal shall not be disturbed (compare Matter of Alexus SS. [Chezzy SS.], 125 AD3d at 1143).
Turning next to Family Court’s determination that respondent was not entitled to visitation with her child, we begin with the presumption that visitation with a noncustodial parent is in the best interests of a child, even when that parent is incarcerated (see Matter of Granger v Misercola, 21 NY3d 86, 91 [2013]; Matter of Kadio v Volino, 126 AD3d 1253, 1254 *1095 [2015]). “However, the best interests of the child is paramount and, therefore, an application for visitation may be denied where there are compelling reasons and substantial proof that visitation would be harmful to the child” (Matter of Joshua SS. v Amy RR., 112 AD3d 1159, 1160 [2013], lv denied 22 NY3d 863 [2014] [citations omitted]; see Matter of Julian P. [Melissa P. — Zachary L.], 106 AD3d 1383, 1385 [2013]). “In determining how much contact with [an incarcerated parent] [is] in the child’s best interests, as in any other custody or visitation analysis, the court [is] required to consider the ‘totality of the circumstances’ ” (Matter of Garraway v Laforet, 68 AD3d 1192, 1194 [2009], quoting Matter of Eck v Eck, 33 AD3d 1082, 1083 [2006]), including factors such as the age of the child, the lack or existence of a meaningful relationship between the parent and the child, the distance and travel time entailed, and the length of the parent’s prison sentence (see Matter of Radio v Volino, 126 AD3d at 1256; Matter of Baker v Blanchard, 74 AD3d 1427, 1428-1429 [2010]; Matter of Garraway v Laforet, 68 AD3d at 1193-1194; Matter of Goldsmith v Goldsmith, 68 AD3d 1209, 1210 [2009]).
Here, the child was approximately 3V2 months old at the time of the permanency and dispositional hearing and the distance between his foster care home and respondent’s correctional facility was estimated to be approximately 300 miles, making it an approximately 12-hour round-trip drive. While we find Family Court’s characterization that visitation with respondent would have had zero benefit to the newborn child as insensitive — and likely incorrect — we nonetheless agree that the tender age of the child, coupled with the distance of travel, provides a substantial basis for the court’s denial of visitation (see Matter of Goldsmith v Goldsmith, 68 AD3d at 1210; Matter of Cole v Comfort, 63 AD3d 1234, 1235-1236 [2009], lv denied 13 NY3d 706 [2009]; Matter of Moore v Schill, 44 AD3d 1123, 1123 [2007]).
Finally, inasmuch as the testimony presented indicated that the child and his half sibling have never had contact and do not have an existing relationship, we likewise find that it was not an abuse of discretion for Family Court[3] to determine that sibling visitation was not warranted under these circumstances[4] (see e.g. Matter of Keenan R. v Julie L., 72 AD3d 542, 542 *1096 [2010]; Matter of Sherman v Hughes, 32 AD3d 959, 960-961 [2006]; Matter of Justin H., 215 AD2d 180, 181 [1995], lvs denied 86 NY2d 709, 710 [1995]; see also Eschbach v Eschbach, 56 NY2d 167, 173 [1982]).
Garry, J.P., Rose, Lynch and Devine, JJ., concur. Ordered that the order is affirmed, without costs.

. It appears that at least one subsequent permanency order exists that effectively supercedes the order appealed from herein (see Matter of Ariel FF., 63 AD3d 1202, 1202-1203 [2009]). However, inasmuch as respondent’s rights are still affected by Family Court’s order now being examined on appeal, the matter before us is not moot (see Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]; Matter of Jacelyn TT. [Tonia TT. — Carlton TT.], 80 AD3d at 1120).

. Apparently paternity had been established as some point between the child’s birth and the permanency hearing approximately four months later.

. We acknowledge that the attorney for the child argued on appeal in favor of Family Court’s order.

. In this regard, we note that the issue of sibling visitation was only addressed in the context of this proceeding and not by way of a petition for sibling visitation pursuant to Family Ct Act article 6.