■ In the Matter of DESIREA F., a Neglected Child. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ANGELA F., Appellant. (And Another Related Proceeding.) [25 NYS3d 385]—

---

Clark, J. Appeals from four orders of the Family Court of St. Lawrence County (Morris, J.), entered June 11, 2014 and September 3, 2014, which, in two proceedings pursuant to Family Ct Act articles 10 and 10-A, among other things, modified the permanency plans for respondent's children.

Respondent's children include, as relevant to this appeal, a son (born in 2003) and a daughter (born in 2005) (hereinafter collectively referred to as the subject children). Petitioner has been involved with respondent and her children since 2003, and, following findings of neglect by Family Court (Potter, J.), the subject children were removed from her care in December 2007. The subject children have resided for many years in Pennsylvania with foster parents who desire to adopt them. A hearing on permanent neglect petitions commenced in November 2010; however, part of the way through that hearing, those petitions were withdrawn and replaced with petitions seeking to terminate respondent's parental rights based on mental illness. Although Family Court granted such petitions, we reversed because of evidentiary errors at the hearing (*Matter of Dakota F. [Angela F.]*, 110 AD3d 1151 [2013], *lv denied* 22 NY3d 1015 [2013]).[1]

After such reversal, permanency goals were set as return to parent but, following a permanency hearing in February 2014, Family Court (Morris, J.) issued an order as to each child in June 2014 changing the permanency goal to adoption. By such time, petitioner had again commenced permanent neglect proceedings seeking to terminate respondent's parental rights regarding the subject children, and, based upon the record, it appears that such proceedings are still pending. A subsequent permanency hearing was conducted in July 2014, resulting in September 2014 orders that continued the goal as adoption for the subject children. Respondent appealed from the four orders (two on each date) and we consolidated the appeals.[2]

"At the conclusion of a permanency hearing, Family Court is

---

**1.** We had previously reversed a permanency goal for the son that imposed concurrent and inherently contradictory goals of return to parent and placement for adoption where Family Court (Potter, J.) also failed to conduct an age-appropriate consultation with the child (*Matter of Dakota F. [Angela F.]*, 92 AD3d 1097, 1098-1099 [2012]).

**2.** Petitioner's argument that the appeals from the June 2014 orders are now moot is unavailing since the modifications therein "altered petitioner's obligations in future permanency hearings from working toward reunification to working toward permanent placement and termination of parental

required to make findings and enter an order of disposition 'upon the proof adduced . . . and in accordance with the best interests and safety of the child' " (*Matter of Jacelyn TT. [Tonia TT.—Carlton TT.]*, 80 AD3d 1119, 1120 [2011], quoting Family Ct Act § 1089 [d]; *see Matter of Alexus SS. [Chezzy SS.]*, 125 AD3d 1141, 1142 [2015]). "While returning the child to the parent is the preferred outcome, when such reunification is not possible because of a parent's unwillingness or inability to correct the conditions that led to the removal of the child from the home, the goal then shifts to finding a permanent, stable solution as soon as possible" (*Matter of Dezerea G. [Lisa G.]*, 97 AD3d 933, 935 [2012] [internal quotation marks, brackets and citation omitted]).

We find that the record before us lacks a sound and substantial basis to support Family Court's determination to change the permanency goal to adoption. In our view, the meager record from the February 2014 proceeding does not reflect that Family Court engaged in any "age[-]appropriate consultation" with the subject children (Family Ct Act § 1089 [d]; *see Matter of Dakota F. [Angela F.]*, 92 AD3d 1097, 1098 [2012]) and, while not dispositive (*see Matter of Alexus SS. [Chezzy SS.]*, 125 AD3d at 1143 n 2), this error is further compounded by a permanency hearing lacking in both form and substance. Specifically, despite our prior decision reversing the order terminating respondent's parental rights (*Matter of Dakota F. [Angela F.]*, 110 AD3d at 1152-1154), petitioner's caseworker testified that respondent was afforded no contact with the subject children in the multiple months that passed before the permanency goal was changed from return to parent to adoption. The caseworker stated that, in following the direction of Family Court, no real efforts had been made to further the goal of return to parent.[3] While simply complying with the court-ordered suspension of visitation is also not enough, in and of itself, to support a finding that petitioner failed to exercise reasonable efforts (*see Matter of Rebecca KK.*, 55 AD3d 984, 985-986 [2008]), the testimony of the caseworker demonstrated very limited knowledge regarding mandated services being provided to either the subject children or respondent since the prior permanency hearing. More particularly, the caseworker was unable to provide information regarding counseling for the subject children and, similarly, admitted that she was unable

---

rights" (*Matter of Jacelyn TT. [Tonia TT.—Carlton TT.]*, 80 AD3d 1119, 1120 [2011]).

3. The reason that respondent's visitation with the subject children was suspended is unclear from the record before us.

to identify respondent's mental health counselor and, at the time of the hearing, had had no contact with such counselor. The caseworker did state that she saw respondent twice monthly to provide her with caseworker counseling.[4]

Most concerning, however, is that no real inquiry was made into respondent's current situation or her willingness or ability to correct the conditions that led to the initial removal of the subject children from her home. Rather, in changing the permanency goal, Family Court relied upon "the full history of the case" and considered a permanency hearing report that contained irrelevant information about a child who was not the proper subject of the proceedings. Likewise, much of the testimony at the February 2014 hearing concerned respondent's older child[5] rather than the subject children. Although continuing the subject children in the care and custody of petitioner was warranted due to the length of time that they had been separated from respondent, Family Court's determination to change the permanency goal is without a sound and substantial basis in the record and, as such, represents another misapplication of law (see Matter of Dakota F. [Angela F.], 110 AD3d at 1153-1154; Matter of Dakota F. [Angela F.], 92 AD3d at 1098-1099). In light of the significant time that has elapsed since the permanency goal was altered, we deem it prudent to remit this matter for further proceedings before Family Court. In so doing, we note our concern with Family Court's decision to grant the motion by respondent's attorney to be relieved as counsel and respondent proceeding pro se (see Family Ct Act § 262 [a] [i]).

Respondent's remaining contentions, to the extent that they have not been rendered academic, have been considered and found to be unavailing.

Garry and Egan Jr., JJ., concur.

Lahtinen, J.P. (dissenting). I respectfully dissent. Although I agree with the majority that the record should have been more fully developed and clearer, nonetheless, I believe that despite its defects there is a sound and substantial basis in the record

---

4. In its June 11, 2014 orders, Family Court finds that "[r]easonable efforts to make and finalize the previous permanency planning goal of *placement for adoption* were made as follows: caseworker counseling" (emphasis added). We note that the prior permanency planning goal was, in fact, return to parent, a permanency goal that requires "reasonable efforts . . . to eliminate the need for placement of the child[ren] and to enable the child[ren] to safely return home" (Family Ct Act § 1089 [c] [4] [i])—efforts that are different from those required when the goal is adoption (see Family Ct Act § 1089 [c] [4] [ii], [iii]).

5. This child was in the care of her grandmother.

to support Family Court's determinations and, accordingly, I would affirm.

Petitioner has been involved with respondent and her four children for many years, the subject two children were removed from her care in 2007, and they have resided since March 2011 with foster parents who desire to adopt them and by whom they wish to be adopted. Respondent's parental rights were previously terminated, but evidentiary errors resulted in reversal (*Matter of Dakota F. [Angela F.]*, 110 AD3d 1151 [2013], *lv denied* 22 NY3d 1015 [2013]). At the commencement of the permanency hearing after our reversal, petitioner informed Family Court that new permanent neglect petitions had been filed and requested discharge to adoption as the permanency goal. "With respect to the permanency goal, although the overarching consideration is always to return the child[ren] to the parent, when such reunification is not possible because of a parent's unwillingness or inability to correct the conditions that led to the removal of the children from the home, the goal then shifts to finding a permanent, stable solution as soon as possible because it is not in the children's best interests to continue in foster care on an indefinite or long-term basis" (*Matter of Destiny EE. [Karen FF.]*, 82 AD3d 1292, 1294 [2011] [internal quotation marks and citations omitted]).

Respondent's history included, among other things, several significant mental health issues. Proof from the February 2014 hearing indicated that she had discharged herself from medical treatment with her psychiatrist. Although the time line is not well developed, at some point she returned to a mental health clinic where she saw a counselor; but she had not yet resumed medical treatment with a psychiatrist. Respondent harassed the subject children's mental health counselor with calls reflecting her self-interest, resulting in Family Court directing her to cease calling the counselor. She caused significant distress to one of her other children (with whom she had limited supervised visitation) by discussing pending proceedings with that child. Her actions reflected conduct detrimental to the subject children and an unwillingness to adequately address her underlying problems. Moreover, during the time that these proceedings involving the future of the subject children were pending, respondent—an acknowledged risk level one sex offender—violated her probation and was returned to jail. Evidence received without objection at the July 2014 hearing included that respondent had previously allowed the subject children around sex offenders, and she had past criminal conduct for acts involving a child.

Although the subject children's appellate counsel—who advocates for affirming—stated that the children met with Family Court at one of the permanency hearings, the record fails to substantiate such a meeting. Family Court was required to conduct an age-appropriate consultation regarding the subject children's preferences (*see* Family Ct Act § 1089 [d]; *Matter of Alexus SS. [Chezzy SS.]*, 125 AD3d 1141, 1143, n 2 [2015]; *Matter of Rebecca KK.*, 61 AD3d 1035, 1037 [2009]). The subject children were ages 8 and 10 and living with their prospective adoptive parents in Pennsylvania at the time of the hearings. Their attorney at the February 2014 hearing, who had requested that the children not be required to attend due to concerns about respondent's conduct, stated on the record that she had met with the children and they wanted Family Court to know that they "were both very adamant that they're very happy and that [the prospective adoptive parents] love them very much and that they very much feel a part of that family and they do not want that disrupted." Their caseworker, who stated that she had just spoken with the subject children, testified similarly at the July 2014 hearing, and the children's counselor reported in a document in evidence the same strong desire of the children, adding that the ongoing proceedings were causing them to be "very stressed." Under all the circumstances, there was sufficient discerning of the subject children's preferences.

Ordered that the orders are modified, on the law and the facts, without costs, by reversing so much thereof as modified the permanency goal from return to parent to placement for adoption; matter remitted to the Family Court of St. Lawrence County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.