■ In the Matter of AMANDA L. AUSTIN, Respondent, v JASON C. SMITH, Appellant. (And Another Related Proceeding.) [42 NYS3d 422]—

Egan Jr., J. Appeal from an order of the Family Court of Otsego County (Lambert, J.), entered January 13, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of a son (born in 2011). By order entered on consent in November 2012, the parties were granted joint legal custody of the child with equal parenting time. According to all involved, the mother and the father thereafter worked in a cooperative fashion and successfully shared physical custody of their son each week. In July 2015, the mother, who resided in Otsego County, filed a modification petition seeking primary physical custody, and the father, who resided in Madison County, cross-petitioned for similar relief—each citing the fact that the child was nearing school age and would need to establish a primary residence for the purpose of enrolling in school. Following a hearing, Family Court awarded primary physical custody of the child to the mother and certain parenting time to the father. This appeal by the father ensued.

"A parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred

since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (*Matter of Ryan v Lewis*, 135 AD3d 1135, 1136 [2016] [internal quotation marks and citations omitted]; *accord Matter of Colleen GG. v Richard HH.*, 135 AD3d 1005, 1007 [2016]; *see Matter of Belrose v Belrose*, 141 AD3d 780, 781 [2016]). Inasmuch as "alternating physical custody of a school-age child whose parents reside in different school districts simply is not practical" (*Matter of Fritts v Snyder*, 139 AD3d 1143, 1145 [2016]), there is no question that the requisite change in circumstances was demonstrated here (*see Matter of Wilson v Hendrickson*, 88 AD3d 1092, 1093-1094 [2011]; *Matter of Hughes v Hughes*, 80 AD3d 1104, 1104-1105 [2011]). As such, we are left to consider whether, upon due consideration of all of the relevant factors, including "each parent's ability to furnish and maintain a suitable and stable home environment for the child, past performance, relative fitness, ability to guide and provide for the child's overall well-being and willingness to foster a positive relationship between the child and the other parent" (*Matter of Zahuranec v Zahuranec*, 132 AD3d 1175, 1176 [2015] [internal quotation marks and citations omitted]; *see Matter of Rockhill v Kunzman*, 141 AD3d 783, 784 [2016]; *Matter of Knox v Romano*, 137 AD3d 1530, 1531 [2016]), Family Court's award of residential custody to the mother is supported by a sound and substantial basis in the record.

The record reflects that, to their great credit and despite living nearly one hour apart from one another, the mother and the father have communicated successfully on a near daily basis and have worked together for the benefit of their child—alternating physical custody during the course of each week depending upon their respective schedules and sharing the transportation associated therewith. At the time of the hearing, the mother resided with her boyfriend, their child and the maternal grandmother in a four-bedroom farmhouse; the mother was enrolled in nursing school and, when she was not in school, helped with chores on the boyfriend's dairy farm. The mother testified that the child was covered under the boyfriend's health insurance plan and that the maternal grandmother assisted with child care. The father, on the other hand, was working for a company that builds barn shells out of reclaimed wood; at the time of the hearing, the father also was helping out on his mother's dairy farm approximately 10 hours each week and, during the summer months, was devoting 15 to

30 hours each week to his barbeque catering business. The father agreed that he and the mother were able to communicate effectively most of the time, described where the child would attend kindergarten if he was awarded physical custody and indicated that the paternal grandmother, who lived approximately five miles away, assisted with child care when he was working. According to the attorney for the child, the parties' respective residences were "pretty equivalent," the mother and father each were possessed of "some resources and support," the child was "equally attached" to both parents and, in her opinion, benefitted significantly from "so much contact" with each of them. For those reasons, the attorney for the child took no position as to the award of physical custody, finding no "reason to recommend one setting over the other."

In awarding custody to the mother, Family Court seems to have penalized the father for failing to rebuke the paternal grandmother for allegedly "discuss[ing] adult matters with the child." We agree that the mother's suspicions as to what the paternal grandmother may have said to the child regarding the school he would be attending and/or his relationship with the mother's boyfriend are largely unsubstantiated and, therefore, do not provide a sound basis upon which to deprive the father of physical custody. Our fact-finding powers, however, are as broad as those possessed by Family Court (*see Bowman v Engelhart*, 112 AD3d 1187, 1189 [2013]; *Matter of Valentine v Valentine*, 3 AD3d 646, 647 [2004]), and we are persuaded that the mother's schedule is somewhat more flexible/less demanding than the father's schedule. Additionally, we note that the mother has extended family in the area and that awarding primary physical custody to her would enable the child to reside with his half sibling. For these reasons, we find that Family Court's award of primary physical custody to the mother is supported by a sound and substantial basis in the record.

That said, we conclude that Family Court's award of parenting time to the father—consisting of alternating weekends and one half of school vacations and holidays—should be expanded. As noted previously, the attorney for the child believed that the child benefitted greatly from substantial contact with both parents and, when asked what sort of visitation schedule she envisioned if she were to be awarded primary physical custody of the child, the mother replied, "I would like him to spend every weekend with his father and we'd still split the holidays like we have been," in addition to spending time with the father during school breaks and splitting the summer "50/50." Given that no misconduct on the part of the father was alleged (much

less demonstrated), and in light of the established and positive relationship existing between the father and the child, we find that the visitation/parenting time arrangement fashioned by Family Court does not comport with the child's best interests. "As our authority in . . . visitation matters is as broad as that of Family Court and the record is sufficiently complete for us to modify the father's parenting time" (*Matter of Gentile v Warner*, 140 AD3d 1481, 1483 [2016]; *see Matter of O'Dale UU. v Lisa UU.*, 140 AD3d 1249, 1252 [2016]), we deem it appropriate to increase the father's parenting time to three out of every four weekends commencing December 2, 2016. The father's parenting time on such weekends shall commence at 4:00 p.m. on Friday and conclude at 7:00 p.m. on Sunday. In the event that the father's parenting time falls on a three-day holiday weekend, his parenting time shall be increased by one additional day—to either commence on Thursday at 4:00 p.m. or to conclude on Monday at 7:00 p.m.—as appropriate. The balance of Family Court's award of parenting time, granting the father one half "of all school vacations and holidays, as well as such other and further parenting time as the parties so agree," remains intact.

McCarthy, J.P., Lynch, Clark and Aarons, JJ., concur. Ordered that the order is modified, on the facts, without costs, by awarding respondent additional parenting time as set forth in this Court's decision, and, as so modified, affirmed.