■ In the Matter of DAWN M. and Others, Neglected Children. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHAEL M. et al., Appellants. [58 NYS3d 231]—

Aarons, J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered September 3, 2015, which, in a proceeding pursuant to Family Ct Act articles 10 and 10-A, modified the permanency plan of the subject children.

Respondent Brendi M. (hereinafter the mother) and respondent Michael M. (hereinafter the father) are the parents of four daughters, Desirae M. (born in 2004), Samantha M. (born in 2007), Summer M. (born in 2008) and Dawn M. (born in 2009). In May 2013, respondents were adjudicated to having neglected the children and were ordered to engage in court-ordered rehabilitative services. In September 2013, the children, after they had been residing with the father, were removed to the care and custody of petitioner stemming from allegations that

the father struck Desirae.[1] In March 2015, petitioner filed a permanency hearing report seeking to change the permanency goal for the children from return to parent to termination of parental rights and freeing the children for adoption. The parties subsequently consented to keeping placement of the children in foster care and to a permanency plan of return to parent pending the filing of a petition to terminate parental rights. The mother thereafter objected to the continued placement of the children in foster care and Family Court reopened the permanency hearing on the mother's application for return of the children.[2] Following the hearing, in a September 2015 order, Family Court modified the permanency plan from return to parent to termination of parental rights and freeing the children for adoption and directed petitioner to file a termination of parental rights petition. The father and the mother separately appeal from the September 2015 order.

"At the conclusion of a permanency hearing, the court has the authority to modify an existing permanency goal and must enter a disposition based upon the proof adduced and in accordance with the best interests of the child[ren]" (*Matter of Dezerea G. [Lisa G.]*, 97 AD3d 933, 935 [2012] [citations omitted]; *see Matter of Rebecca KK.*, 55 AD3d 984, 986 [2008]). "Wherever possible, the societal goal and overarching consideration is to return a child to the parent, and reunification remains the goal unless a parent is unable or unwilling to correct the conditions that led to the removal" (*Matter of Kobe D. [Kelli F.]*, 97 AD3d 947, 948 [2012] [internal quotation marks and citations omitted]; *see generally Matter of Michael B.*, 80 NY2d 299, 310 [1992]).

At the hearing, a foster care caseworker testified that she supervised visits between the mother and the children and stated that the goals were to refrain from using excessive corporal punishment or physical abuse and to improve parenting skills. Notwithstanding these goals, the foster care caseworker testified regarding her concerns about the mother's behavior as it related to the children's safety when the mother

---

1. Petitioner commenced a separate neglect proceeding based upon this incident and Family Court's finding that the father neglected Desirae and derivatively neglected Samantha, Summer and Dawn was affirmed by this Court (*Matter of Dawn M. [Michael M.]*, 134 AD3d 1197, 1198 [2015]).

2. At the time of the permanency hearing, the father was serving a prison sentence after pleading guilty to, among other things, attempted criminal possession of a weapon in the third degree. The father waived his right to appear at the permanency hearing but was nonetheless represented by counsel. The father's position expressed by his counsel at the conclusion of the hearing was the return of the children to the mother.

visited with the children. The mother would become increasingly frustrated when trying to discipline the children and, on more than one occasion, she almost hit one of them when throwing her hands up in exasperation. While the foster care caseworker stated that the mother did not strike the child, the caseworker was nonetheless concerned because the mother displayed a lack of awareness as to the child's whereabouts. The caseworker further testified that she was concerned that the mother's frustration may rise to the level of physical force being used.

The foster care caseworker described one visitation where the mother threatened to leave when she could not control the children and this caused the children to become upset. The caseworker also stated that, after visitation or phone calls with the mother, the children's behavior with their foster parents or other children would become worse and the children would hurt other children at school. The caseworker offered techniques to help the mother with her parenting and disciplining the children, but the mother generally failed to implement the suggestions. Although the mother completed a basic level parenting class, she has been resistant in following the caseworker's recommendations in pursuing a higher level parenting class. According to the caseworker, the mother lacked insight as to why the children were in foster care and failed to understand what she needed to do to get the children out of foster care.

A case manager for petitioner similarly testified that the mother had yet to acknowledge that she understood why the children were placed in foster care. The case manager also stated that, despite completing some anger management and parenting classes, the mother has not benefitted from such services inasmuch as she becomes "very frustrated when the [children] do not respond to her directions." According to the case manager, the mother has not attended some of the children's medical appointments notwithstanding transportation being provided for her and being instructed on how to access such transportation.

In view of the foregoing, we discern no basis to disturb Family Court's decision to continue placement of the children in petitioner's care and to modify the permanency goal to freeing the children for adoption. Although the mother completed some parenting classes and testified on her own behalf, Family Court found that the mother's testimony was "inconsistent" and "totally unbelievable" (*see Matter of Kasja YY. [Karin B.]*, 69 AD3d 1258, 1259 [2010], *lv denied* 14 NY3d 711 [2010]). Given

the length of time that the children have been in petitioner's care, the mother's lack of awareness as to why the children were placed in foster care and the mother's failure to take advantage of services offered to her, Family Court's determination was supported by a sound and substantial basis in the record (*see Matter of Destiny EE. [Karen FF.]*, 82 AD3d 1292, 1294 [2011]; *Matter of Telsa Z. [Rickey Z.]*, 74 AD3d 1434, 1435 [2010]; *Matter of Lindsey BB. [Ruth BB.]*, 72 AD3d 1162, 1164 [2010]; *Matter of Haylee RR.*, 47 AD3d 1093, 1095 [2008]).

The father contends that Family Court lacked the authority to modify the permanency plan with respect to him given that he consented to having the children remain in foster care pending the outcome of a termination of parental rights proceeding and only the mother requested a new hearing. We reject this argument inasmuch as Family Court has the power to modify a permanency goal "even in the absence of a request" of a party (*Matter of Duane FF. [Harley GG.]*, 135 AD3d 1093, 1093 [2016] [internal quotation marks and citations omitted], *lv denied* 27 NY3d 904 [2016]; *see Matter of Jacelyn TT. [Tonia TT.—Carlton TT.]*, 80 AD3d 1119, 1120 [2011]).

Regarding the contention that Family Court erred in failing to conduct the age-appropriate consultation with the children as mandated by Family Ct Act § 1089 (d), there is nothing in the record indicating that Family Court fulfilled its obligation to conduct such consultation. While a personal consultation is not required, "the court is required to find some age-appropriate means of ascertaining their wishes" (*Matter of Julian P. [Melissa P.-Zachary L.]*, 106 AD3d 1383, 1385 [2013]; *see Matter of Dakota F. [Angela F.]*, 92 AD3d 1097, 1098 [2012]). Here, the wishes of Desirae were made known through the closing statement of her counsel, who "support[ed] the plan of freed for adoption." Indeed, the attorney for Desirae also stated in her closing statement that "[t]he mother admitted that [Desirae] went to a [s]ervice [p]lan [r]eview and told her that she wanted to be freed for adoption." Furthermore, the foster care caseworker testified that Desirae told her that she wanted to be adopted. Based on the foregoing, we find that the wishes of Desirae were sufficiently ascertained (*compare Matter of Julian P. [Melissa P.-Zachary L.]*, 106 AD3d at 1385).

We cannot reach the same conclusion, however, with respect to the wishes of Dawn, Summer and Samantha. Contrary to the argument by the attorney for the three younger children, the mere participation at the hearing and the giving of a closing statement, without more, by the attorney who represented Dawn, Summer and Samantha do not satisfy the age-

appropriate consultation requirement of Family Ct Act § 1089 (d). The closing statement by the attorney for the three younger children was devoid of any statement indicating the preferences of Dawn, Summer or Samantha (*see Matter of Julian P. [Melissa P.-Zachary L.]*, 106 AD3d at 1385). Nor does the attorney for the three younger children point to any other evidence in the record that reflects their wishes. We are mindful that the court is ultimately guided by the best interests of the children (*see Matter of Dezerea G. [Lisa G.]*, 97 AD3d at 935). The Legislature, however, has made it explicitly clear that a permanency hearing "shall" include an age-appropriate consultation (Family Ct Act § 1089 [d]; *see* 22 NYCRR 205.17 [d]). In light of this statutory command, the children's wishes, although not dispositive (*see Matter of Alexus SS. [Chezzy SS.]*, 125 AD3d 1141, 1143 n 2 [2015]), carry significance and cannot be lightly overlooked. Given that the record does not disclose the wishes of Dawn, Summer or Samantha, the matter must be remitted so that Family Court may conduct the age-appropriate consultation under Family Ct Act § 1089 (d) with respect to these children. Finally, our review of the record does not indicate any bias by Family Court toward the mother such that remittal must be before a new judge (*compare Matter of Baby Girl Z. [Yaroslava Z.]*, 140 AD3d 893, 894 [2016]).

The mother's remaining contentions, to the extent that they have not been rendered academic, have been examined and lack merit.

Peters, P.J., Garry, Lynch and Clark, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as modified the permanency plan from return to parent to placement for adoption and directed petitioner to file a termination of parental rights petition with respect to Dawn M., Summer M. and Samantha M.; matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.