Matter of Dakota F. (Angela H.) (2020 NY Slip Op 01208)





Matter of Dakota F. (Angela H.)


2020 NY Slip Op 01208


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

526044

[*1]In the Matter of Dakota F., a Neglected Child. St. Lawrence County Department of Social Services, Respondent; Angela H., Appellant. (And Another Related Proceeding).

Calendar Date: January 13, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
St. Lawrence County Department of Social Services, Canton (David D. Willer of counsel), for respondent.
Reginald H. Bedell, Willsboro, attorney for the children.



Egan Jr., J.P.
Appeal from an order of the Family Court of St. Lawrence County (Richards, J.), entered November 29, 2017, which, in two proceedings pursuant to Family Ct Act articles 10 and 10-a, among other things, modified the permanency plan for respondent's children.
Respondent is the mother of, as relevant here, a son (born in 2003) and a daughter (born in 2005), who were both removed from petitioner's care and custody in December 2007 and are currently the subject of two permanent neglect proceedings filed in February 2014. There is a protracted history of litigation involving respondent and the subject children dating back to when the children were initially adjudicated to be neglected in 2004 and 2006, respectively (Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d 1243, 1243 [2017]; Matter of Desirea F. [Angela F.], 137 AD3d 1519, 1519 [2016]; Matter of Desirea F. [Angela F.], 136 AD3d 1074, 1075 [2016]; Matter of Dakota F. [Angela F.], 110 AD3d 1151, 1152 [2013], lv denied 22 NY3d 1015 [2013]; Matter of Dakota F. [Angela F.], 92 AD3d 1097, 1098 [2012]). As relevant here, following a February 2014 permanency hearing, Family Court (Morris, J.) issued orders in June 2014, modifying the permanency goal for the subject children from return to parent to free for adoption. A subsequent permanency hearing was thereafter conducted in July 2014 and orders were issued in September 2014 continuing the goal as adoption for both children (see Matter of Desirea F. [Angela F.], 136 AD3d at 1075). In 2016, this Court reversed Family Court's June and September 2014 orders, finding that the change in permanency goal to free for adoption lacked a sound and substantial basis in the record and remitted the matter for further proceedings before a different Family Court judge (id. at 1076-1077). Following remittal, two additional permanency hearings were held before Family Court (Richards, J.) in May 2017 and November 2017.[FN1] Following the November 2017 permanency hearing, Family Court issued a permanency hearing order, once again modifying the permanency planning goal from return to parent to free for adoption. Respondent appeals.
Initially, we find that respondent's waiver of her right to counsel was knowing, voluntary and intelligent. As relevant here, "[t]he decision to permit a party who is entitled to counsel to proceed pro se must be supported by a showing on the record of a knowing, voluntary and intelligent waiver of the right to counsel" (Matter of Anthony K., 11 AD3d 748, 749 [2004] [citations omitted]; see Matter of Mitchell WW. [Andrew WW.], 74 AD3d 1409, 1411 [2010]). At the parties' November 20, 2017 appearance, Family Court confirmed that the mother was aware of her right to counsel and that if she could not afford counsel, the court would appoint her at an attorney at no charge. Respondent indicated that she understood her rights in this regard and that she wished to proceed pro se with the appointment of stand-by counsel, whom Family Court appointed. We note that, despite this Court having raised concerns in our prior decisions in related matters with respect to respondent's continuing election to proceed pro se (Matter of Desirea F. [Angela F.], 137 AD3d at 1520; Matter of Desirea F. [Angela F.], 136 AD3d at 1077), the mother has nevertheless continued to represent herself for a number of years, and the record demonstrates that she has been able to effectively advocate on her behalf, including raising relevant objections and cross-examining witnesses (see Matter of Anthony K., 11 AD3d at 749-750). Accordingly, upon review, we find no error in Family Court permitting the mother to proceed pro se, with the assistance of standby counsel.
Respondent contends that the record before Family Court fails to demonstrate that petitioner made sincere efforts at reunifying her with the subject children and is devoid of evidence supporting a permanency goal of free for adoption. We disagree. "At the conclusion of a permanency hearing, [Family C]ourt has the authority to modify an existing permanency goal and must enter a disposition based upon the proof adduced and in accordance with the best interests of the child[ren]" (Matter of Dezerea G. [Lisa G.], 97 AD3d 933, 935 [2012] [citations omitted]; accord Matter of Dawn M. [Michael M.], 151 AD3d 1489, 1490 [2017], lv denied 29 NY3d 917 [2017]; Matter of Alexus SS. [Chezzy SS.], 125 AD3d 1141, 1142 [2015]). "Wherever possible, the societal goal and overarching consideration is to return a child to the parent, and reunification remains the goal unless a parent is unable or unwilling to correct the conditions that led to removal" (Matter of Dawn M. [Michael M.], 151 AD3d at 1490 [internal quotation marks and citations omitted]; see Matter of Duane FF. [Harley GG.], 135 AD3d 1093, 1093-1094 [2016], lv denied 27 NY3d 904 [2016]). Notably, a modification of a permanency goal will not be disturbed if the determination is supported by a sound and substantial basis in the record (see Matter of Kobe D. [Kelli F.], 97 AD3d 947, 948 [2012]).
Here, at the November 2017 permanency hearing, petitioner submitted, among other things, a comprehensive neuropsychological evaluation of respondent that was prepared by Michael Small, a clinical neuropsychologist, who met with respondent over the course of three days in July and September 2016. Small diagnosed respondent as suffering from, among other mental health diagnoses, personality disorder, with features of several different personality disorders, predominantly borderline, paranoid, schizotypal, narcissistic and antisocial features and noted that she has long-standing mental health issues dating back to childhood and early adolescence. Small opined that, although a review of respondent's medical history revealed that she has engaged in multiple treatment strategies from various mental health providers over the years, said treatment has only been "marginally successful," largely due to, among other things, respondent's denial of her mental health issues, her lack of compliance in treatment and her conflict with treatment providers. As a result, Small recommended that respondent engage in further mental health treatment, including consultation with a speech pathologist to address logorrhea (incessant speaking) and graphorrhoea (incessant writing), consultation with a psychiatrist with expertise in prescribing psychotropic medications for persons with personality disorders, engaging in weekly individual therapy with a clinician who is experienced in working with personality disorders and "commit[ting] to a routine of serious participation in therapy over a prolonged course."[FN2] Small indicated that, at present, respondent's personality disorder remains "essentially untreated" and that if her condition goes unresolved, it could "have a detrimental effect on her ability to provide for children in her care, especially with respect to the negative impact on their social and psychological maturation and their emotional stability."
Petitioner also called the caseworker assigned to respondent's case to testify. According to the caseworker, she has been assigned to respondent's case since 2013. Following receipt of Small's evaluation, based on the treatment recommendations therein, she called four separate mental health providers and other wellness offices to inquire whether they could provide the recommended services. Only one provider, Mosaic Behavioral Health Clinic, indicated that it could provide respondent with the recommended counseling services and, in April 2017, the caseworker obtained a release from respondent and provided a referral to Mosaic. Although respondent made an appointment with Mosaic, she did not schedule it until four months later, in August 2017 — despite the fact that earlier appointments were available — citing her work schedule and vacation plans. Following the appointment, the caseworker followed up with respondent's mental health counselor, who indicated that respondent suffers from unspecified anxiety disorder and unspecified personality disorder with narcissistic and antisocial traits for which further treatment was recommended; however, respondent refused to engage in any additional treatment. The caseworker also followed up with respondent, who confirmed that she would not be obtaining any further treatment at Mosaic.[FN3] Finally, Family Court also conducted an age-appropriate consultation with the children — who now reside in Iowa with their foster family — by having them appear telephonically at the hearing (see Family Ct Act § 1089 [d]; Matter of Dawn M. [Michael M.], 151 AD3d at 1492-1493; compare Matter of Desirea F. [Angela F.], 136 AD3d at 1076-1077).[FN4]
We remain troubled by the numerous procedural miscues and misapplications of law that have resulted in the children remaining in the care and custody of petitioner since 2007, without a permanent and stable resolution. Ultimately, however, "[t]he purpose of Family Ct Act article 10-A is, in part, to promote permanency, safety and well-being in the lives of children placed in foster care" (Matter of Jacelyn TT. [Tonia TT.—Carlton TT.], 80 AD3d 1119, 1121 [2011] [internal quotation marks, brackets and citation omitted]) as "it is not in the children's best interests to continue in foster care on an indefinite or long-term basis" (Matter of Destiny EE. [Karen FF.], 82 AD3d 1292, 1294 [2011]). The record before us demonstrates that the mother presently has various chronic and unresolved mental health diagnoses for which she is not receiving treatment; namely, an untreated personality disorder. Although the mother's frustration with the manner in which this case has languished in Family Court is justified under the circumstances, we note that, despite these protracted delays, the mother, while making various strides to improve her situation, including maintaining regular part-time employment and continuing to pursue her education full time, has failed to adequately acknowledge or address her underlying mental health issues by engaging in recommended mental health treatment. Although the mother has made certain consistent efforts to obtain reunification with her children, given the length of time that the children have been in foster care, we cannot continue to stand by in hopes that she will eventually recognize and acknowledge her significant mental health issues, the effect that her diagnoses have on her relationship with the children and their maturation and emotional stability and commit to the recommended course of mental health treatment, while continuing to ignore the children's right to have some permanency and stability in their lives. Accordingly, on the record before us, we find that Family Court's determinination modifying the permanency goal to placement for adoption was supported by a sound and substantial basis in the record (see Matter of Dawn M. [Michael M.], 151 AD3d at 1491-1492; Matter of Lindsey BB. [Ruth BB.], 72 AD3d 1162, 1164 [2010]).
Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: At the conclusion of the May 2017 permanency hearing, Family Court determined that petitioner had made reasonable efforts to ensure the outcome of the permanency planning goal of return to parent and that it was in the best interests of the children to remain with their current foster family, and the court maintained the permanency goal of return to parent, pending further decisions of the court. The permanency hearing order with respect to the May 2017 hearing, however, was not signed and entered until the morning of the commencement of the next permanency hearing on November 20, 2017. At that appearance, Family Court indicated that, at the May 2017 permanency hearing, it had improperly continued in effect the previous permanency order as the Family Court judge (Morris, J.) who presided over the prior December 7, 2016 permanency hearing had reserved judgment and was subsequently recused by decision of this Court prior to issuance of any such order. Accordingly, Family Court (Richards, J.), with the consent of the parties, put a permanency order into effect.

Footnote 2: Small elaborated that, given the chronic nature of respondent's condition, at a minimum, a three-year course of treatment would be required.

Footnote 3: Respondent indicated that she did not feel comfortable traveling to the Mosaic office in the City of Ogdensburg, St. Lawrence County in the winter or meeting with a male counselor. In October 2017, she requested petitioner to pay for her to obtain another evaluation at a more conveniently located mental health provider that she had located; however, petitioner refused to pay for another evaluation given that it had already paid for two prior evaluations.

Footnote 4: The children have resided with the same foster parents since 2011, first residing in Pennsylvania and presently residing in Iowa.