Matter of Sandra DD. (Kenneth DD.) (2020 NY Slip Op 03965)





Matter of Sandra DD. (Kenneth DD.)


2020 NY Slip Op 03965


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

528956 529281

[*1]In the Matter of Sandra DD., Alleged to be a Neglected Child. Delaware County Department of Social Services, Respondent; Kenneth DD., Appellant. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of Sandra DD., an Infant. Delaware County Department of Social Services, Respondent; Sarah DD., Respondent. (Proceeding No. 3.)

Calendar Date: June 9, 2020

Before: Lynch, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Teresa C. Mulliken, Harpersfield, for appellant.
Delaware County Department of Social Services, Delhi (Amy B. Merklen of counsel), for Delaware County Department of Social Services, respondent.
Paul G. Madison, Stamford, for Tina CC., respondent.
Larisa Obolensky, Delhi, attorney for the child.



Pritzker, J.
Appeals (1) from an order of the Family Court of Delaware County (Northrup Jr., J.), entered March 13, 2019, which, in three proceedings pursuant to Family Ct Act articles 10 and 10-A and Social Services Law § 358-a, among other things, continued placement of the subject child, and (2) from that part of an order of said court, entered May 23, 2019, which denied respondent Kenneth DD.'s motion to renew.
Respondent Kenneth DD. (hereinafter the grandfather) is the maternal grandfather of the subject child (born in 2009). Shortly after the child's birth, respondent Sarah DD. (hereinafter the mother), who is developmentally disabled, voluntarily placed the child in the custody of petitioner, and the grandfather and the child's maternal grandmother (hereinafter the grandmother) were designated as the child's custodians.[FN1] In September 2009, Family Court (Becker, J.) terminated the voluntary placement, awarded the mother, the grandfather and the grandmother joint legal custody of the child and the grandfather and the grandmother primary physical custody.[FN2] The grandfather and the grandmother were ordered to open and maintain a preventive services case with petitioner for a minimum period of six months. In March 2010, the grandfather left the grandmother and moved — with the child and the mother — into the residence of his girlfriend, respondent Tina CC. (hereinafter the girlfriend). In June 2010, following a physical confrontation between the mother and the girlfriend, petitioner indicated the mother for inadequate guardianship. The mother subsequently moved into an adult home and the child remained with the grandfather and the girlfriend, who refused preventive services.
In June 2018, a child protective report was received regarding the father and the girlfriend alleging inadequate guardianship and lack of medical care on the child's behalf. This report was subsequently indicated. Thereafter, in July 2018, petitioner filed neglect petitions against the grandfather and the girlfriend alleging, among other things, that they placed the child in inappropriate physical restraints, provided inadequate supervision and failed to follow the child's mental health recommendations. Following a hearing held pursuant to Family Ct Act § 1027, Family Court (Northrup Jr., J.) determined that removal of the child from the grandfather's residence was necessary and placed the child into the direct care and custody of the child's maternal aunt (hereinafter the aunt), under the supervision of petitioner. In December 2018, the aunt indicated that she could no longer be a resource for the child. Petitioner then filed an order to show cause requesting that the child no longer be placed directly with the aunt and instead be placed in petitioner's care and custody. The grandfather and the girlfriend consented to this placement on a temporary basis.
Soon thereafter, petitioner offered a voluntary placement agreement to the mother (see Social Services Law § 384-a), providing for the indefinite placement of the child in foster care on the basis that the mother was unable to care for the child. When the parties appeared for the fact-finding hearing on the July 2018 neglect petitions, petitioner indicated that, upon Family Court's approval of the voluntary placement agreement, petitioner would move to withdraw and dismiss the neglect petitions against the grandfather and the girlfriend. At that time, petitioner stated that visits with the grandfather and the girlfriend would "be as therapeutically recommended." Thereafter, the mother executed the voluntary placement agreement, and petitioner filed a petition for approval of the placement instrument (see Social Services Law § 358-a).
In February 2019, Family Court held a permanency hearing, at which the child was not present. Following the presentation of evidence, the court determined that the mother knowingly and voluntarily executed the placement instrument and found that the mother did not want the child to return to the grandfather's care. On March 13, 2019, three orders were entered: (1) a permanency hearing order; (2) an order dismissing the neglect petitions; and (3) an order of disposition approving the voluntary placement agreement. As relevant here, the permanency hearing order terminated the child's placement pursuant to the neglect proceedings, but continued the child's placement pursuant to the voluntary placement proceeding. In April 2019, the grandfather moved for leave to reargue and renew with respect to the permanency hearing order, which the court denied. The grandfather appeals from the March 2019 permanency hearing order and that part of the May 2019 order that denied his motion to renew.
Initially, the grandfather's arguments directed at Family Court's approval of the voluntary placement instrument are not before this Court inasmuch as he has not filed a notice of appeal from the order of disposition approving the voluntary placement agreement (see Family Ct Act § 1115). Next, the grandfather challenges the permanency hearing order, arguing that it should be reversed because the court improperly delegated its authority to determine visitation to the child's therapist.[FN3] We disagree. Although "[a] court cannot delegate its authority to determine visitation to a mental health professional" (Matter of Zakariah SS. v Tara TT., 143 AD3d 1103, 1106 [2016]; see Matter of Gaitor v Morrissey, 47 AD3d 975, 977 [2008], appeal dismissed 10 NY3d 890 [2008]), the record does not reflect that the court did so here.
At the time the child was removed from the grandfather's care, Family Court ordered that contact between the child and the grandfather be arranged by petitioner. Thereafter, at the February 2019 permanency hearing, the grandfather requested that the court order the child's treatment provider to evaluate whether visitation would be in the child's best interests. In response, petitioner stated that the grandfather was currently having weekly visits and the attorney for the child indicated that the child's treatment provider had reported that the visits were positive and that contact with the grandfather was helpful for the child. Family Court denied the grandfather's application for an evaluation, finding that the grandfather was in regular contact with the child and that the nine-year relationship preceding the temporary removal order "was not a terribly positive relationship from the child's point of view." To that end, in the permanency hearing order, the court ordered that petitioner provide at least biweekly visitation to "the parent or other person(s) legally responsible for the child." The court also ordered that petitioner "encourage and facilitate visitation with the child by any non-custodial parent or grandparent who has obtained an order pursuant to [Family Ct Act] § 1081." This result is reasonable given the circumstances and is not an unlawful delegation but, rather, a pragmatic approach specifically leaving open the ability for a further de novo petition by the grandfather in the event that he was not satisfied with the quality and quantity of visits from petitioner (compare Matter of Holland v Holland, 92 AD3d 1096, 1096-1097 [2012], with Matter of Steven M. [Stephvon O.], 88 AD3d 1099, 1101 [2011]).
However, we do agree with the grandfather that Family Court erred in failing to conduct an age-appropriate consultation with the child. Family Ct Act § 1089 (d) mandates that permanency hearings "include an age-appropriate consultation with the child" (see Matter of Dawn M. [Michael M.], 151 AD3d 1489, 1492 [2017], lv denied 29 NY3d 917 [2017]). "Although the statute does not require a young child . . . to be personally produced in court, Family Court must find some age-appropriate manner to consult with the child" (Matter of Dakota F. [Angela F.], 92 AD3d 1097, 1098 [2012] [internal citation omitted]; see Matter of Dawn M. [Michael M.], 151 AD3d at 1492). Here, although the permanency hearing order states that Family Court consulted with the child in an age-appropriate manner, the record does not reflect this. To that end, the attorney for the child informed the court of the multitude of reasons why it was inappropriate for the child to be present at the hearing and then offered his opinion that remaining in foster care was best for the child. He did not, however, articulate the child's wishes to the court (see Matter of Dawn M. [Michael M.], 151 AD3d at 1492-1493; Matter of Julian P. [Melissa P.-Zachary L.], 106 AD3d 1383, 1385 [2013]). Although reversal may be appropriate where the court fails to ascertain the child's wishes (see Matter of Dakota F. [Angela F.], 92 AD3d at 1098; compare Matter of Rebecca KK., 61 AD3d 1035, 1037-1038 [2009]), under these circumstances, reversal is unnecessary; rather, we direct that, in future permanency hearings, the court conduct an age-appropriate consultation with the child.
Finally, with respect to the grandfather's motion to renew, since the grandfather raised in his motion the same argument that he advanced at the permanency hearing, premised on the same facts, Family Court properly denied the motion (see CPLR 2221 [e]; Matter of Treistman v Cayley, 155 AD3d 1343, 1345 [2017]).
Lynch, J.P., Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: There has been no establishment of paternity.

Footnote 2: Although this order is not contained in the record, we take judicial notice of Family Court's findings and determinations.

Footnote 3: The grandfather's contentions relating to the timing of the February 2019 permanency hearing in relation to the approval of the voluntary placement instrument lack merit since the permanency hearing was properly scheduled and held pursuant to Family Ct Act §§ 1027 and 1089 (a) (2).