Matter of Isayah R (2020 NY Slip Op 07967)





Matter of Isayah R


2020 NY Slip Op 07967


Decided on December 24, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 24, 2020

530683

[*1]In the Matter of Isayah R., a Neglected Child. Sullivan County Department of Social Services, Respondent; Shaye R., Appellant.

Calendar Date: November 24, 2020

Before: Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


John Ferrara, Monticello, for appellant.
Sullivan County Department of Family Services, Monticello (Constantina Hart of counsel), for respondent.
Jacqueline Ricciani, Monticello, attorney for the child.



Lynch, J.P.
Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered November 4, 2019, which, in a proceeding pursuant to Family Ct Act articles 10 and 10-a, modified the permanency plan of the subject child.
As more fully set forth in our prior decision (149 AD3d 1223 [2017]), respondent is the mother of a child (born in 2010) who has special needs. In May 2016, petitioner commenced a neglect proceeding against respondent, alleging that she was unable to provide appropriate supervision for the child due to ongoing substance abuse issues. The child was removed from respondent's care in June 2016 and has resided in a therapeutic foster home since that time.
In May 2019 — at respondent's request — psychologist Claude Schleuderer conducted a psychological evaluation of respondent, the child and the foster parents, after which he issued a report opining that "the best long-term solution [for the child was] . . . an [o]pen [a]doption." In connection with Schleuderer's findings, petitioner filed a permanency report seeking to change the child's permanency goal from reunification with respondent to placement for adoption. Following a permanency hearing, Family Court granted petitioner's request, finding that "[a] permanency plan of placement for adoption" was in the child's best interests.[FN1] Respondent appeals.
As a threshold matter, petitioner has informed us that it filed a petition to terminate respondent's parental rights to the child in January 2020, and the record reveals that another permanency hearing was scheduled for March 2020. Notwithstanding these developments, respondent's appeal from the November 2019 order is not moot. By changing the permanency goal, Family Court "alter[ed] petitioner's obligations in future permanency hearings from working toward reunification to working toward permanent placement and termination of parental rights" (Matter of Nevaeh L. [Katherine L.], 177 AD3d 1400, 1401 [2019] [internal quotation marks and citations omitted]). Consequently, any new orders entered in this proceeding "w[ill] be the direct result of the order appealed from, and the issue of whether the order appealed from was proper w[ill] continue to affect [respondent's] rights" (Matter of Victoria B. [Jonathan M.], 164 AD3d 578, 580 [2018]; see Matter of Nevaeh L. [Katherine L.], 177 AD3d at 1401).
Turning to the merits, we agree with respondent that Family Court failed to conduct an age-appropriate consultation with the child prior to changing the permanency goal (see Family Ct Act § 1089 [d]), but we conclude that reversal is unnecessary in these circumstances. Pursuant to Family Ct Act § 1089 (d), Family Court must undertake an "age appropriate consultation with the child." Although the statute does not require a personal consultation with the child (see Matter of Sandra DD. [Kenneth DD.], 185 AD3d 1259, 1262 [2020]; Matter of Dawn M. [Michael M.], 151 AD3d 1489, 1492 [2017], lv denied 29 NY3d 917 [2017]; Matter of Dakota [*2]F. [Angela F.], 92 AD3d 1097, 1098 [2012]), it does obligate the court to find "some age-appropriate means of ascertaining [the child's] wishes" (Matter of Dawn M. [Michael M.], 151 AD3d at 1492 [internal quotation marks and citation omitted]).
Although Family Court did not speak with the child or directly ascertain his wishes, it heard extensive testimony from Schleuderer regarding the child's emotional state and best interests, as well as his opinion about respondent's ability to handle the child's special needs. Schleuderer's evaluation report, which was admitted into evidence during the hearing, noted the child's feelings about his foster care placement and connection to the foster parents and emphasized that transferring the child to respondent's care would be detrimental to the child's long-term functioning. During the permanency hearing, the attorney for the child conveyed the child's feelings about the "uncertainty of his future," and one of the foster parents recounted certain questions the child had asked her in which he indicated his feelings about being adopted. Under these circumstances, the court's failure to consult with the child or directly ascertain his wishes does not warrant reversal (see e.g. Matter of Sandra DD. [Kenneth DD.], 185 AD3d at 1262-1263).
Respondent further contends that petitioner failed to make a sincere effort at reunification and that the evidence adduced at the permanency hearing did not support modifying the permanency goal. We disagree. "At the conclusion of a permanency hearing, Family Court has the authority to modify an existing permanency goal and must enter a disposition based upon the proof adduced and in accordance with the best interests of the child[]. Wherever possible, the societal goal and overarching consideration is to return a child to the parent, and reunification remains the goal unless a parent is unable or unwilling to correct the conditions that led to removal" (Matter of Dakota F. [Angela H.], 180 AD3d 1149, 1151 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Desirea F. [Angela F.], 136 AD3d 1074, 1075-1076 [2016]). "At a permanency hearing, the petitioner bears the burden of establishing the appropriateness of . . . a goal change . . . by a preponderance of the evidence" (Matter of Damani B. [Theresa M.], 174 AD3d 524, 526 [2019] [internal quotation marks and citation omitted]). Family Court's determination to modify a permanency goal will not be disturbed unless it lacks a sound and substantial basis in the record (see Matter of Dakota F. [Angela H.], 180 AD3d at 1151; Matter of Kobe D. [Kelli F.], 97 AD3d 947, 948 [2012]).
The record reveals that, leading up to the permanency hearing, petitioner provided respondent with services that were both appropriate and consistent with the prior goal of reunification, including referring her to two programs that purportedly offered parenting courses on high-needs children, providing monthly rights [*3]and responsibilities letters, coordinating visits with the child and providing financial assistance (see Matter of Damani B. [Theresa M.], 174 AD3d at 526).[FN2] Respondent was also participating in mental health and substance abuse counseling.
Notwithstanding such services, a foster care worker expressed concern about respondent's ability to provide the child with the structure he requires. Schleuderer echoed that sentiment, explaining that the child has serious behavioral issues stemming from acute trauma, which require significant structure and patience. Schleuderer expressed concern about respondent's ability to be a calm and stabilizing influence in the child's life, opining that, although respondent had made commendable efforts to overcome the issues that led to the child's removal, she required at least another year of services before the child could potentially be returned to her care. Moreover, after reviewing respondent's treatment records and speaking with her directly, Schleuderer emphasized that respondent had unresolved mental health and substance abuse issues and was unwilling to accept that fact. At the time of the hearing, the child had been in a therapeutic foster home for approximately three years, had shown a marked improvement in his mental health status and no longer met the criteria for an autism diagnosis. In Schleuderer's opinion, transferring the child to respondent's care in these circumstances "would likely create disastrous consequences for his long-term adjustment and functioning." In light of the foregoing, Family Court's determination that it was in the child's best interests to modify the permanency goal from return to parent to placement for adoption has a sound and substantial basis in the record (see Matter of Dakota F. [Angela H.], 180 AD3d at 1153-1154; Matter of Dawn M. [Michael M.], 151 AD3d at 1491-1492).
We are unpersuaded by respondent's remaining procedural and evidentiary challenges. The foster parents, as parties to this proceeding (see Family Ct Act § 1089 [b] [1] [i]), were entitled to notice and an opportunity to be heard, and Family Court did not abuse its discretion in allowing them to remain in the courtroom during all of the testimony. Nor did the court abuse its discretion in limiting certain testimony regarding the nature of the foster parents' home environment and disciplinary tactics, as the relevant inquiry was whether the child's permanency goal should be modified, not whether respondent's parental rights should be terminated or whether the foster parents were fit to serve as the child's adoptive parents (compare Matter of Michael JJ. [Gerald JJ.], 101 AD3d 1288, 1292-1293 [2012], lv denied 20 NY3d 860 [2013]). Respondent's remaining contentions, to the extent not expressly addressed herein, have been considered and found to be lacking in merit.
Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Respondent's younger child, who had been removed from her care and placed with the maternal grandmother, was returned to respondent's care in August 2019 on a six-month trial discharge basis.

Footnote 2: As the record was compiled in the context of a permanency hearing, with the corresponding focus on the preceding six months, it does not fully describe all of the services provided to respondent since the child's removal in 2016.