Matter of Gabrielle N. (Linda N.) (2022 NY Slip Op 01213)





Matter of Gabrielle N. (Linda N.)


2022 NY Slip Op 01213


Decided on February 24, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 24, 2022

531804 532214
[*1]In the Matter of Gabrielle N. and Others, Neglected Children. Saratoga County Department of Social Services, Respondent; Linda N., Appellant. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of Hayden N., a Neglected Child. Saratoga County Department of Social Services, Respondent; Bruce N., Appellant. (Proceeding No. 3.) (And Another Related Proceeding.)

Calendar Date:January 14, 2022

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Fisher, JJ.

Susan J. Civic, Albany, for Linda N., appellant.
Alexandria G. Verrigni, Rexford, for Bruce N., appellant.
Michael Hartnett, County Attorney, Ballston Spa (Alexis M. Osborne of counsel), for respondent.
Kimberly A. Harp, Clifton Park, attorney for the children.



Reynolds Fitzgerald, J.
Appeals from two orders of the Family Court of Saratoga County (Jensen, J.), entered June 8, 2020, which, in four proceedings pursuant to Family Court articles 10 and 10-a, modified the permanency plan of the subject children.
Respondent Linda N. (hereinafter the mother) and respondent Bruce N. (hereinafter the father) are the parents of five children (born in 2007, 2013, 2014 and 2016 [twins]). In December 2017, petitioner filed a neglect petition against the mother alleging impairment of said children's physical, mental and/or emotional condition, misuse and/or abuse of drugs, failure to provide proper supervision and guardianship, failure to adequately treat or seek treatment for the mother's mental illness and engagement in domestic violence in the presence of the children.[FN1] A temporary removal order was issued and, after a removal hearing, Family Court, in January 2018, removed the children to foster care upon a finding that the mother failed to substantially comply with the terms of the temporary order and the children were in imminent danger if not removed from the mother's care. In June 2018, petitioner issued its first permanency plan report setting forth the goal of return to parent. In July 2018, Family Court, based upon the mother's consent, entered on order of fact-finding and disposition, adjudging the children to be neglected.
In September 2018, the mother gave birth to another child and petitioner filed derivative neglect petitions against the mother and the father. In March 2019, Family Court entered a fact-finding order and order of disposition adjudging this child to be derivatively neglected. In March 2020, petitioner once again filed a permanency hearing report setting forth the goal of return to parent. Following a hearing, Family Court, by order entered in June 2020, found that the children should remain in petitioner's custody and that petitioner had made reasonable efforts to make and finalize the permanency planning goal of return to parent. As to the parents, the court found that the mother failed to complete mental health counseling, the mother and the father were both unsuccessfully discharged from Northeast Intensive Aftercare Prevention Program (hereinafter IAPP),[FN2] the mother failed to contact and cooperate with petitioner, the mother and the father failed to attend the children's appointments, the father failed to protect one of the children from his father (the child's grandfather), who had sexually abused her, and the father failed to obtain appropriate housing and, instead, continued to reside with the grandfather. Based on these findings, Family Court modified the permanency plan from return to parent to placement for adoption.[FN3] The mother and the father separately appeal from the June 2020 order.
"At the conclusion of a permanency hearing, the court has the authority to modify an existing permanency goal and must enter a disposition based upon the proof adduced and in accordance with the best interests [*2]of the children" (Matter of Dawn M. [Michael M.], 151 AD3d 1489, 1490 [2017] [internal quotation marks, brackets and citations omitted], lv denied 29 NY3d 917 [2017]). "While the aspiration is to return . . . child[ren] to [their] parents, where such goal proves impossible because [the] parent[s] [are] unable to correct the conditions that led to the removal, the goal then becomes finding a permanent, stable solution for the child[ren]" (Matter of Duane FF. [Harley GG.], 135 AD3d 1093, 1093-1094 [2016] [internal quotation marks, ellipses and citations omitted], lv denied 27 NY3d 904 [2016]). "Family Court's determination to modify a permanency goal will not be disturbed unless it lacks a sound and substantial basis in the record" (Matter of Isayah R. [Shaye R.], 189 AD3d 1942, 1944-1945 [2020] [citations omitted]).
The mother and the father contend that petitioner failed to make a sincere effort at reunification and that the evidence adduced at the permanency hearing did not support modifying the permanency goal. The record reveals that petitioner provided services to the mother and the father that were both appropriate and consistent with the prior goal of reunification. Petitioner undertook visits to the foster homes of the children, contacted service providers, reviewed service provider records, scheduled telephone calls and visits between the parents and the children, scheduled sibling visits, ensured the children were receiving proper services — including mental health counseling, medical and dental appointments and appropriate individual education plans — advised the parents of the children's medical appointments, dental appointments and individual education plan meetings, engaged in repeated contact with the father and the mother,[FN4] arranged for transportation and explored relative resources (see Matter of Isayah R. [Shaye R.], 189 AD3d at 1945).
The evidence at the hearing also revealed that the mother failed to complete mental health counseling services, the mother and the father were unsuccessfully discharged from IAPP due to lack of progress and attendance, and both failed to attend many of the children's medical and dental appointments and committee on special education meetings. In addition, the father failed to obtain adequate housing and continued to reside with the grandfather, a registered sex offender who had previously sexually abused one of the daughters,[FN5] the father at times failed to appropriately manage the children at visitations and he did not demonstrate that he could independently care for the children. Notwithstanding the above, neither parent expressed any concerns as to the other parent's ability to care for the children. Despite services being in place and the children being in foster care for over two years, the mother and the father failed to make progress to overcome the problems that led to the removal of their children in the first place and failed to complete services offered to them. Thus, there is a [*3]sound and substantial basis in the record to support the modification of the permanency plan, and we discern no basis to disturb Family Court's determination (see Matter of Dawn M. [Michael M.], 151 AD3d at 1492; Matter of Duane FF. [Harley GG.], 135 AD3d at 1094; Matter of Destiny EE. [Karen FF.], 82 AD3d 1292, 1294 [2011]).[FN6]
The mother next contends that Family Court erred in denying her motion that sought, via a subpoena duces tecum, confidential medical records of the mother, the father and the children. Family Court denied the motion as overbroad and beyond the scope of the proceeding. We find that Family Court did not abuse its discretion in denying the mother's request for the records under the circumstances presented (see CPLR 3101 [a]; 3120 [2]; cf. Matter of Richard SS., 29 AD3d 1118, 1123-1124 [2006]; Matter of Fernald v Vinci, 5 AD3d 596, 596 [2004]; compare Matter of Grover S. [Jonathan H.G.], 176 AD3d 828, 829-830 [2019]; Matter of Murphy v Lewis, 106 AD3d 1091, 1092 [2013]; see generally Family Ct Act § 1038 [a]).
Garry, P.J., Clark, Aarons and Fisher, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: The petition also named a sixth child (born in 2004), who is not the father's child.

Footnote 2: IAPP is a program that provides short-term intensive services to families whose children have been removed from their home and to assist parents to become more understanding of and better prepared to manage their children's behaviors and emotional needs with the goal that the children will be allowed to return home.

Footnote 3: Petitioner had previously filed a termination of parental rights petition.

Footnote 4: Although petitioner was unable to physically meet with the mother from October 2019 through February 2020, the caseworker testified that she continued to contact the mother via written correspondence, unanswered home visits and telephone calls.

Footnote 5: The father also brought the abused daughter to his house while the grandfather was present.

Footnote 6: At the fact-finding hearing, the attorney for the children advocated for return of the children to the parents. In her brief on appeal, she contends that there is a sound and substantial basis for the permanency goal change.