Matter of Kashmir JJ. (Shawn JJ.)

2026 NY Slip Op 02019

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Kashmir JJ., Alleged to be a Neglected Child. Broome County Department of Social Services, Respondent; Shawn JJ., Appellant, et al., Respondent.

Decided and Entered:April 2, 2026

CV-25-0137

Calendar Date: February 9, 2026

Before: Clark, J.P., Reynolds Fitzgerald, Ceresia, Powers And Corcoran, JJ.

Lisa K. Miller, McGraw, for appellant.

Cheryl D. Sullivan, County Attorney, Binghamton (Brianna Strope Vaughan of counsel), for Broome County Department of Social Services, respondent.

Natalie B. Miner, Homer, attorney for the child.

[*1]

Powers, J.

Appeal from two orders of the Family Court of Broome County (Mark Young, J.), entered November 1, 2024 and January 10, 2025, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.

Respondents Shawn JJ. (hereinafter the father) and Aleischa II. (hereinafter the mother) are the parents of the subject child (born in 2022). Shortly after the child's birth, petitioner received a report alleging that the mother had a known substance abuse history and the child had exhibited symptoms of withdrawal following his birth. The mother consented to placement of the child with the maternal grandparents upon discharge from the hospital, and a neglect petition was subsequently filed.FN1 In March 2023, after proceedings had already commenced on the initial petition, a second report was received alleging that the father had been subject to a traffic stop, which ultimately resulted in the discovery of an envelope consistent with heroin packaging and fentanyl in his vehicle. Petitioner filed an amended neglect petition alleging, among other things, that the father knew or should have known that the mother was abusing illegal substances during her pregnancy and failed to take sufficient measures to prevent her from doing so, which resulted in the child suffering symptoms of withdrawal that had no other medical explanation. Family Court found the child to have been neglected and, after a dispositional hearing, continued placement with the maternal grandparents. The court additionally directed, as is relevant here, that the father engage in certain parenting classes, be subject to random drug screens and participate in those services deemed appropriate by petitioner. The father appeals the orders of fact-finding and disposition.FN2

"A party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Matter of Raquel ZZ. [Angel ZZ.], 216 AD3d 1242, 1243-1244 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of N'Thai N. [Mali N.], 242 AD3d 1313, 1317-1318 [3d Dept 2025]; Matter of Rosaliee HH. [Samantha HH.], 221 AD3d 1299, 1300 [3d Dept 2023]). "In determining whether respondent failed to exercise a minimum degree of care, the critical inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Joseph GG. [Chrystal FF.], 227 AD3d 1238, 1239 [3d Dept 2024] [internal quotation marks, brackets and citations omitted). "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed [*2]on appeal unless they lack a sound and substantial basis in the record" (Matter of Jahkell SS. [Victoria SS.], 237 AD3d 1416, 1417 [3d Dept 2025] [internal quotation marks and citations omitted]).

At the fact-finding hearing, petitioner presented the testimony of multiple caseworkers, the physician assistant who treated the child and the police officer who conducted a traffic stop of the father's vehicle. During this testimony, it was elicited that the child was hospitalized for over a week after his birth, during which time he was treated in the Neonatal Intensive Care Unit (hereinafter NICU).FN3 At this time, possible drug use was suspected and, as a result, both the mother and the father were questioned. The father denied any current drug use but conceded that he was aware the mother had used drugs. The mother admitted that she utilized drugs at the beginning of her pregnancy, stopped for a time and then relapsed two to three weeks prior to the birth of the child. Both the mother and the father were requested to undergo drug screens, but both denied such requests and denied a similar request for the child to undergo a drug screen while in the NICU. In consideration of the mother's known drug history, the father was asked for a contingency plan if the mother relapsed but was unable to provide any plan other than stating simply that he and the mother would "figure it out." The physician assistant that treated the child testified that the child was admitted to the NICU because he was exhibiting symptoms that were consistent with either sepsis or withdrawal. However, because the parents refused to consent to a drug screen for the child, his treatment was paused because treating physicians could not be sure of what was in his system. Ultimately, after ruling out other diagnoses, the child was treated with morphine. The physician assistant specifically testified that the mother's admitted heroin use two to three weeks prior to the child's birth was consistent with the symptoms of withdrawal the child was exhibiting. Notably, the child was administered nourishment through a feeding tube while in the NICU because of an increased breathing rate, which was confirmed by the physician assistant to be a symptom of withdrawal. It was further elicited through a caseworker's testimony that, during a subsequent home visit in January 2023, the caseworker observed red marks on the child's face and the child's head appeared flat. The caseworker recommended the parents follow-up with a pediatrician but, when later asked if they had done so, the mother admitted they had not. When this caseworker later attempted to assist scheduling appointments for the child, the parents were uncooperative and did not take the child. During the same January home visit, the caseworker also observed multiple lighters, ashes and a white substance in the parent's bathroom, which she believed to be drug paraphernalia. Similar items were again observed during a later home visit in March 2023 [*3]precipitated by the father's arrest. The police officer testified that, during a March 2023 traffic stop of the father's vehicle, a wax envelope consistent with heroin packaging was found and the father's wallet contained a substance that tested positive for fentanyl. As a result, the father was charged with criminal possession of a controlled substance in the seventh degree.

Deferring to Family Court's credibility determinations, we find there to be a sound and substantial basis in the record to support the court's finding that the father had neglected the child (see Family Ct Act § 1012 [f] [i]; Matter of Jarrett SS. [Jade TT.-Scott SS.], 183 AD3d 1031, 1035 [3d Dept 2020]; see generally Matter of Kingston V. [Javon V.], 234 AD3d 1056, 1057 [3d Dept 2025], lv dismissed 43 NY3d 951 [2025]). Although the father denied using drugs himself, he admitted that he was aware the mother had done so and left the child in her care regardless (see Matter of Misha W. [Melissa R.], 242 AD3d 759, 761 [2d Dept 2025]; Matter of Camden J. [William J.], 167 AD3d 1346, 1350 [3d Dept 2018]). Despite the child exhibiting symptoms of withdrawal, the father denied consent for the child to undergo a drug screen, which caused his treatment to be stalled while medical professionals ruled out other potential causes of his symptoms. Similarly, in spite of observations of drug paraphernalia during two home visits and that he was criminally charged with a drug offense in the course of this proceeding, the father steadfastly refused to undergo drug screenings requested by petitioner. Relevant to both aforementioned facts, the father's arguments to this Court regarding what he claims to be gaps in petitioner's proof are the result of his denial of consent for the child to undergo a drug screen and his own refusal to complete those requested by petitioner. Consequently, the record does not definitively demonstrate that the child was experiencing withdrawal upon his birth or that the father was using illicit substances. Nevertheless, the father's lack of action when aware of the mother's drug use was not the behavior of a reasonably prudent parent and placed the child in imminent danger as demonstrated by, most notably, the child's hospitalization in the NICU (compare Matter of Leo RR. [Joshua RR.], 213 AD3d 1190, 1192-1193 [3d Dept 2023]).

As to the father's challenge to the dispositional order, "[a] dispositional order in a neglect proceeding must reflect a resolution consistent with the best interests of the child after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (Matter of Jaylin XX. [Jamie YY.], 216 AD3d 1224, 1228 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). The testimony elicited during the dispositional hearing demonstrated that the father had not been compliant with recommended services, including drug testing. Additionally, it was testified that parenting classes [*4]were recommended, though the father had older children, so that he could remain up to date regarding child development and safety. We find there to be a sound and substantial basis in the record to support Family Court's determination that the best interests of the child would be served by continued placement with the maternal grandparents, rather than returning the child to the father's care (see Matter of Asiah S. [Nancy S.], 212 AD3d 1062, 1064 [3d Dept 2023], lv denied 39 NY3d 913 [2023]). Similarly, the requirement that the father undergo random drug testing and participate in parenting classes is supported by the record (see Matter of Moses M. [Melissa M.], 237 AD3d 825, 826 [2d Dept 2025], lv denied 44 NY3d 901 [2025]; Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 966-967 [3d Dept 2020]). Finally, the court's directive that he participate in those services deemed appropriate by petitioner did not operate to impermissibly delegate the court's authority as petitioner maintains the duty to develop a service plan that is "tailored to fit the [father's] individual situation" (Matter of Jack V. [Jack U.], 243 AD3d 1174, 1176 [3d Dept 2025] [internal quotation marks and citations omitted]) and this clause did not condition the father's visitation upon his participation in those services (see generally Matter of Sandra DD. [Kenneth DD.], 185 AD3d 1259, 1261 [3d Dept 2020]; Matter of Logan C. [John C.], 169 AD3d 1240, 1246 n 7 [3d Dept 2019]).

The father's remaining arguments have been reviewed and found to be either unpreserved or lacking in merit.

Clark, J.P., Reynolds Fitzgerald, Ceresia and Corcoran, JJ., concur.

Ordered that the orders are affirmed, without costs.

Footnotes

Footnote 1: At some point thereafter — seemingly with petitioner's acquiescence, but not approval — the child returned to the care of the parents. Nevertheless, Family Court later temporarily placed the child with the maternal grandparents once again.

Footnote 2: The mother has not appeared on appeal.

Footnote 3: Family Court properly admitted the child's medical records over the father's hearsay objection, as the statements contained within those records were relevant to the child's treatment and diagnosis (seeMatter of L.K. [C.K.], ___ AD3d ___, ___, 2026 NY Slip Op 01126, *1 [1st Dept 2026]; Matter of Zackery S. [Stephanie S.], 170 AD3d 1594, 1594-1595 [4th Dept 2019]; see alsoPeople v Maisonette, 192 AD3d 1325, 1329 [3d Dept 2021], lv denied 37 NY3d 966 [2021]).